UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JELENA LIU, | ) | |
| NINA HU, | ) | |
| JUNDE ZHU, | ) | |
| XIOTIAN YU, | ) | |
| XILAI DAI, | ) | |
| ZHAORUI NI, | ) | |
| JIDEOFOR ODOEZE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00716-JPH-TAB |
| | ) | |
| KRISTI NOEM, | ) | |
| TODD LYONS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING TRO AND DIRECTING FURTHER PROCEEDINGS**

Seven foreign-citizen students who attend universities in Indiana were recently notified by their schools that their lawful student status had been terminated. Seeking to restore their status so they may continue their studies, they brought this case against the Secretary of the United States Department of Homeland Security and the Acting Director of United States Immigration and Customs Enforcement. Dkt. 1. Plaintiffs have filed a motion for a temporary restraining order that would require Defendants to immediately set aside the termination of their lawful student status. Dkt. [3]. The Court finds that Plaintiffs have not made the showing necessary for the Court to grant such immediate, extraordinary relief, so the motion for a temporary restraining order is **DENIED**.

1

This ruling is in response to Plaintiffs' motion for a temporary restraining order on the current record and therefore does not prohibit Plaintiffs from seeking a preliminary injunction or foretell the Court's ultimate ruling on the merits. *Cf. Decker v. Lammer*, No. 21-1328, 2022 WL 135429 at *2 (7th Cir. Jan. 22, 2022) ("The essence of a temporary restraining order is its brevity, its ex parte character, and . . . its informality."). And given the nature and urgency of Plaintiffs' allegations, discovery may begin immediately and Defendants must respond to the Complaint by April 30, 2025.

## I.
## Facts and Background

The Court recites the facts from Plaintiffs' verified complaint. Dkt. 1.

Plaintiffs are seven undergraduate or graduate students enrolled at Indiana University Indianapolis, Purdue University, or Notre Dame on student status after receiving an F-1 visa. *Id.* at 8–21. F-1 student status is tracked in the Student and Exchange Visitor Information Systems ("SEVIS") database that the United States Department of Homeland Security ("DHS") maintains. *Id.* at 1. In early April 2025, each Plaintiff was told by their school that their lawful F-1 student status had been terminated in SEVIS. *Id.* at 8–21. Consequently,

- Jelena Liu, a graduate student at Indiana University Indianapolis, "may never be able to complete her studies" and her mental-health conditions have worsened. *Id.* at 10.

- Nina Hu, an undergraduate at Purdue University, "will not be able to complete her studies" and is terrified about the possibility of immediate detention and deportation. *Id.* at 12.

- Junde Zhu, an undergraduate at Purdue University, will not be able "to finish and continue his education as planned" and fears being arrested and removed from the United States. *Id.* at 14.

- Xiaotian Yu, a graduate student at Purdue University pursuing a master's degree, will be "unable to finish and continue his education as planned" and fears being arrested and removed from the United States. *Id.* at 15.

- Xilai Dai, a graduate student at Purdue University pursuing a Ph.D, can no longer receive income for teaching classes, will be "unable to finish and continue his education as planned," and fears being "picked up and deported." *Id.*

- Zhaorui Ni, a graduate student at Purdue University pursuing a Ph.D, can no longer work as an instructor or researcher, cannot "continue and complete her education," and worries that she can be detained and removed from the United States. *Id.* at 18–19.

- Jideofor Odoeze, a graduate student at the University of Notre Dame pursing a Ph.D, will not be able to finish his education or receive a National Science Award, for which he is a finalist. *Id.* at 21. He and his wife—who is a dependent of his F-1 visa—fear

being removed from the United States and having their family disrupted[1].  *Id.*

Plaintiffs brought this case on April 15, 2025, against the Secretary of the United States Department of Homeland Security and the Acting Director of United States Immigration and Customs Enforcement ("ICE").  Dkt. 1. Plaintiffs seek a temporary restraining order that would require Defendants to immediately set aside the termination of their SEVIS record and F-1 status. Dkt. 3.

## II.
## Temporary Restraining Order Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021).  To obtain such extraordinary relief, the party seeking the temporary restraining order carries the burden of persuasion by a clear showing.  *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The standard for a temporary restraining order is the same as the standard for a preliminary injunction.  Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry."  *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 446 (7th Cir. 2022).  "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate

---

[1] Mr. Odoeze's two- and four-year old children are United States citizens.  Dkt. 1 at 21.

remedy at law and will suffer irreparable harm if preliminary relief is denied."
*Id.* "If these threshold factors are met, the court proceeds to a balancing
phase, where it must then consider: (3) the irreparable harm the non-moving
party will suffer if preliminary relief is granted, balancing that harm against the
irreparable harm to the moving party if relief is denied; and (4) the public
interest, meaning the consequences of granting or denying the injunction to
non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale'
approach: the more likely the plaintiff is to win on the merits, the less the
balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*,
974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court
equitably weighs these factors together, seeking at all times to minimize the
costs of being mistaken." *Cassell*, 990 F.3d at 545.

**III.**

**A.    Irreparable Harm**

Plaintiffs argue that they will suffer irreparable harm without a TRO
because they "face the disruption of their education and future careers" and
"deportation." Dkt. 4 at 16. The government responds that none of the
Plaintiffs are in removal proceedings and their other alleged harms are too
speculative to support a TRO. Dkt. 15 at 19–20. In reply, Plaintiffs repeat the
"loss of their F-1 status has upended their lives" with harm from "the
possibility of detention and deportation." Dkt. 22 at 14–15.

### 1. Possibility of deportation

Under Supreme Court precedent, "some possibility" of deportation is not enough to show irreparable harm. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "Although removal is a serious burden for many aliens, it is not categorically irreparable." *Id.* at 435. Here, Plaintiffs have not presented evidence that they are detained or face imminent deportation proceedings, or that they would be unable to seek judicial review if either of those things were to happen.[2] *See id.* ("Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."); *Jie Fang v. Dir. United States Immigration & Customs Enforcement*, 935 F.3d 172, 185 (3d Cir. 2019) (holding that the status removal is subject to judicial review as a final agency action).

### 2. Other harm resulting from termination of F-1 student status

Plaintiffs also argue that they will suffer irreparable harm without a TRO because they "face the disruption of their education and future careers". Dkt. 4 at 16. Irreparable harm turns on how each Plaintiff is affected by their status change, which may vary depending on the specific program and type of degree being pursued, the details of available funding, and the ability to study with specific faculty members or in specific programs.

---

[2] For the same reason, Mr. Odoeze's concerns about family disruption from deportation do not support irreparable harm for a TRO. *See* dkt. 1 at 21.

But each plaintiff relies on a conclusory statement that they will not be able to complete their studies and has not designated evidence showing that they would not be able to resume and complete their academic programs if they prevail on the merits in this case. *See Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to [the plaintiff] in allowing her graduation to await the outcome of the trial on the merits."); *Doe v. Bd. of Tr. of Univ. of Ill.*, No. 17-cv-2180, 2017 WL 11593304 at *2 (C.D. Ill. Dec. 18, 2017) ("Also important is the fact that a final judgment in Plaintiff's favor will allow him to return to his education. Thus, the harm, although temporary, is not irreparable."). So at this point, Plaintiffs have not shown non-speculative harm beyond a potential gap in their educations, which standing alone is generally not irreparable harm. *See Medlock v. Tr. of Ind. Univ.*, No. 1:11-cv-977-TWP-DKL, 2011 WL 4068453 at *9 (S.D. Ind. Sept. 13, 2011) (finding lack of irreparable harm in part because the university "could see no reason why [plaintiff] could not obtain reinstatement"); *Bd. of Tr. of Univ. of Ill.*, 2017 WL 11593304 at *2 (finding that any harm from an academic gap of up to two-and-a-half years was "too speculative to warrant the extraordinary and drastic remedy of an injunction").

Similarly, a plaintiff may be able to show that loss of a specific job, perhaps if tied to a specific academic opportunity or faculty member, to be irreparable harm. But there is no such designated evidence before the Court. Ms. Hu "had been hired for a job at Purdue University this summer," but has not explained the harm from losing that opportunity or why it is irreparable.

7

*Id.* at 11.  Mr. Dai similarly "was scheduled to be a paid research assistant at Purdue this summer," but has not explained why the harm from losing that opportunity is irreparable.  *Id.* at 17.  And Mr. Odoeze is a finalist for a National Science Foundation Entrepreneurial Fellowship, but it's speculative whether he might have won the award if his immigration status had not been terminated.  *Id.* at 19; *see Winter v. Natural Res. Defense Council*, 555 U.S. 7, 22 (2008) ("Issuing [injunctive relief] based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").  And while he has lost his "only income" from his employment at Notre Dame, he has provided no evidence of irreparable harm.  *See* dkt. 1 at 20–21.  *See Shegog v. Bd. of Educ. of City of Chi.*, 194 F.3d 836, 839 (7th Cir. 1999) ("[A] temporary deprivation of employment does not inflict irreparable injury, and therefore does not justify a preliminary injunction."); *Equal Emp. Opportunity Comm'n*, 630 F.2d 1254, 1259 (7th Cir. 1980) (Irreparable injury generally "does not include loss of income, inability to find other employment, or financial distress."); *cf. Barron v. City of Granite City, Ill.*, No. 19-cv-834-SMY-MAB, 2019 WL 5067603 at *1 (S.D. Ill. Oct. 9, 2019) (granting a TRO based on imminent homelessness).

The remaining allegations of harm are similarly speculative at this stage. *See Winter*, 555 U.S. at 22.  Ms. Liu is concerned that she "may not" have mental-health care available if she returns to China, but she has not provided

evidence that she will return or that doing so would prevent her from receiving medical care.  Dkt. 1 at 10.

While the Court understands the turmoil that Plaintiffs are experiencing because of the sudden and unexpected termination of their F-1 student status in SEVIS, Plaintiffs have not demonstrated irreparable harm to warrant the extraordinary exercise of judicial power required for the Court to issue a temporary restraining order.  *See* dkt. 22 at 13–15.  Because Plaintiffs have not shown irreparable harm justifying a TRO, the Court need not address the remaining injunction factors.  *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022).

### B.  Venue

Ms. Liu is the only Plaintiff who resides in this district.  *See* dkt. 1 at 3. The government therefore argues that venue is improper in this district as to the other Plaintiffs.  Dkt. 15 at 10–13.

The venue statute allows a civil action against an officer of the United States to be brought in "any judicial district in which . . . the plaintiff resides if no real property is involved in the action.  28 U.S.C. § 1391(e)(1).  "Additional persons" may then be "joined as parties to any such action in accordance with the Federal Rules of Civil Procedure."  *Id.*  Because Ms. Liu resides in this district, venue is permissible here.  The remaining Plaintiffs may then be joined if "they assert any right to relief jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or serious of transactions or occurrences."[3] Fed. R. Civ. P. 20(a)(1).

Plaintiffs argue that their status terminations occurred about the same time and in the same manner, so they may qualify for joinder under Rule 20. *See Goodvine v. Meisner*, 608 Fed. App'x 415, 417 (7th Cir. 2015). But district courts have discretion to deny joinder "with considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes." *Cont. Indemnity Co. v. BII, Inc.*, 104 F.4th 630, 645–46 (7th Cir. 2024). Here, because of the individualized facts regarding the status terminations and irreparable harm, it appears that joinder "will not foster the objectives of [Rule 20], but will result in prejudice, expense, and delay." *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863–64 (7th Cir. 2018). Plaintiffs residing outside this district therefore shall show cause why their claims should not be dismissed without prejudice for misjoinder. *See id.* In other words, while the Court understands it has the authority under Rule 20 to adjudicate the claims of all seven plaintiffs, it solicits further explanation as to why it should exercise its discretion and do so.

## IV.
## Further Proceedings

If Plaintiffs residing outside this district do not voluntarily dismiss their claims, they **shall show cause by April 23, 2025** why the Court should not

---

[3] Plaintiffs' claims must also share a common question of law, which is undisputed here.

dismiss them without prejudice under Federal Rule of Civil Procedure 21. *See Lovell*, 888 F.3d at 863–64. Defendants **shall respond by April 25, 2025**.

Defendants **shall respond to the complaint and file the administrative record by April 30, 2025**.

If Plaintiffs file a motion for preliminary injunction, briefing will follow the schedule in Local Rule 7.1(c)(3), and the Court will schedule a hearing as soon possible after briefing and any necessary pre-hearing discovery are complete.

Discovery may begin immediately. The government should be prepared to promptly answer what Plaintiffs' current immigration status is and whether that status is accurately reflected in SEVIS. Any issues with the scope and deadlines for discovery may be raised to Magistrate Judge Baker.

**SO ORDERED.**

Date: 4/17/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

11