UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VISHNU VARDHAN NALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 25 C 3969 |
| | ) |
| KRISTI NOEM, in her official capacity as | ) Judge Rowland |
| Secretary of Homeland Security, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

This case involves an international student who seeks emergency injunctive relief requiring the United States Department of Homeland Security ("DHS") and its sub-agency, U.S. Immigration and Customs Enforcement ("ICE"), to change an entry in the latter's Student and Exchange Visitor Information System ("SEVIS") to reflect that plaintiff Vishnu Vardhan Nali has lawful nonimmigrant status as a foreign student. *See generally* Dkt. 3 ("Am. Compl."). To that end, Nali requests, *inter alia*, that this court order defendants to alter its SEVIS record for him to reflect that he has F-1 student status. *Id.* at 16 (Prayer for Relief). But Nali never lost his F-1 status and ICE has taken (multiple) subsequent actions that moot this case. This is because the premise of plaintiff's claims is incorrect—SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. *See* Dkt. 32-2, Declaration of Michelle Young ("Young Decl.") at ¶ 7. It is a database and tool for both federal agencies and academic institutions to enroll and monitor foreign students. In this way, Nali's Administrative Procedure Act ("APA") claim must fail because there is no "final agency action" involved here. Relatedly, his claim regarding any potential "immigration detention" is similarly unripe—as the amended complaint

never even alleges that he will be detained at all or much less in the imminent future. Finally, plaintiff's Fifth Amendment claims fail at the threshold because Nali lacks any liberty or property interest in ICE's SEVIS records.

## Background

I. **Statutory And Regulatory History**

    A. **The F-1 Nonimmigrant Program**

The Immigration and Nationality Act ("INA") establishes the framework for foreign nationals[1] who wish to temporarily come to the United States to pursue their studies. *See Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 169–72 (D.C. Cir. 2022). More specifically, the INA allows for the entry of a foreign national, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a foreign national must

---

[1] This memorandum uses the term "foreign national" as equivalent to the statutory term of "alien" within the INA.

"pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

During their studies, foreign students may also elect to study in the United States via "Optional Practical Training" ("OPT"), which is work that must be "directly related to [a student's] major area of study" in order to qualify as authorized training. *Id.* § 214.2(f)(10). OPT allows eligible students to obtain temporary employment that is directly related to a foreign national's major area of study. *Id.* § 214.2(f)(10)(ii). And foreign nationals in F-1 status, who received a science, technology, engineering, or mathematics ("STEM") degree, may extend participation in the OPT program for up to an additional two years. *Id.* § 214.2(f)(10)(ii)(C); *see also Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 173 (D.C. Cir. 2022). Further, OPT can occur while a student is still "in school," during breaks, or after a student has completed their course of study. *Id.* § 214.2(f)(10)(ii)(A)(1)–(3). While in school, a foreign national's status is based on that student pursuing a degree and need not be routinely renewed. *Id.* § 214.2(f)(7). For post-degree completion OPT, there are limits on how long an individual can be unemployed. In particular, foreign nationals in F-1 status may not accrue more than ninety days of unemployment unless granted a twenty-four-month STEM OPT extension, in which case they may not accrue more than a total of 150 days of unemployment. *Id.* § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may be considered a failure to maintain status. *Id.*

### B. The SEVIS Database

Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information]

with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title."[2]  8 U.S.C. § 1372(a)(1).  Accordingly, the Secretary of Homeland Security created SEVIS, "which is a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants."  ICE, *Student and Exchange Visitor Information System*, https://www.ice.gov/sevis/overview (last visited June 13, 2025); *see also Young Dong Kim v. Holder*, 737 F.3d 1181, 1182 n.2 (7th Cir. 2013) (describing SEVIS).

In short, "DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States."  United States Department of Homeland Security, *Privacy Act of 1974; System of Records*, 86 Fed. Reg. 69,663 (Dec. 8, 2021); *see also Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 770 F. App'x 136, 136 (4th Cir. 2019).  And schools are required to update SEVIS with information about foreign students in their programs.  8 C.F.R. § 214.3(g)(1).

## II.  Factual And Procedural History

According to the operative complaint, Nali is an Indian national with F-1 status who, "[s]ince September 2023, . . . has been a graduate student at DePaul University."  Am. Compl. ¶ 18.  He will graduate with a master's degree in business analytics two days from now and plans

---

[2] Many provisions of the INA still refer to the Attorney General, but in 2002, Congress transferred much of the INA's authority to the Secretary of Homeland Security. *See* 6 U.S.C. § 557; 8 U.S.C. § 1103; *see also Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019).

on pursuing OPT shortly thereafter. *See id.* at ¶ 2.³ However, Nali was arrested in May 2024 for two counts of retail theft and the United States Department of State ("State Department") prudentially revoked his F-1 visa in April 2025. *See id.* at ¶ 8; Dkt. 19-1, Declaration of Andre Watson ("April Watson Decl.") at ¶¶ 7, 9. "[O]n April 8, 2025, DePaul University informed [Nali] that his SEVIS record was terminated." Am. Compl. ¶ 41. ICE made this termination "[b]ased on NALI's criminal history," April Watson Decl. ¶ 8; *see also* Am. Compl. ¶ 41 (discussing this arrest).

Although plaintiff still retains his F-1 nonimmigrant status, *see* April Watson Decl. ¶ 10, the plaintiff insists that his employment plans based on OPT have been frustrated and he fears being detained and/or deported based on what "other students have . . . faced," Am. Compl. ¶ 44. He filed this case on April 11, 2025, and the amended complaint brings three claims: (1) a claim arguing that ICE's termination of their SEVIS record for Nali violated due process because it was done without notice or an opportunity to be heard, *id.* at ¶¶ 45–48; (2) a similar claim arguing that the termination was arbitrary and capricious in violation of the APA, *id.* at ¶¶ 49–53; and (3) a claim that he is unlawfully detained in violation of the Fifth Amendment, *see id.* at ¶¶ 54–56. Three days later, he moved for a temporary restraining order, which focused only on his first two claims. Dkt. 4 & 5. Plaintiff then moved for that motion to be converted to one for a preliminary injunction, which is still being briefed. *See* Dkt. 26, 31, 34, 37, 40.

Since the inception of this case, however, ICE "has set the [plaintiff's] SEVIS record back to 'active.'" Dkt. 32-3, Declaration of James Hicks ("Hicks Decl.") at ¶ 3. This means that "all previous information that was part of the SEVIS record is restored, and there are no 'gaps' or

---

³ *See* 2025 Kellstadt Graduate School of Business Commencement - Live Stream, https://www.youtube.com/watch?v=7CJ7q7geTN0 (last accessed June 13, 2025).

5

'lapses' in the SEVIS record." *Id.* In other words, "ICE's reactivation of the plaintiff['s] SEVIS record is . . . retroactive to the date of its initial termination such that there is no gap in the plaintiff['s] SEVIS record." Dkt. 32-1, Declaration of Andre Watson of May ("May Watson Decl.") at ¶ 7. And with F-1 students on OPT, their SEVIS "record has been reset to the end date set forth in the alien's SEVIS record before its termination." *Id.* at ¶ 8. Furthermore, "ICE has no plans . . . to re-terminate the plaintiff[']s SEVIS record based solely on the [National Crime Information Center ("NCIC")] record that led to its initial termination." *Id.* at ¶ 6.

## Legal Standards

### I. Motions To Dismiss For Lack Of Subject Matter Jurisdiction

The standard of review under Federal Rule of Civil Procedure 12(b)(1) for a motion to dismiss depends on whether a factual or facial challenge is being raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If, on the one hand, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* at 174. On the other hand, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589–90 (7th Cir. 2014). "[W]hen evaluating a facial challenge to subject matter jurisdiction," courts employ "the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)," as described below. *Silha*, 807 F.3d at 174.

### II. Motions To Dismiss For Failure To State A Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, courts accept as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See*

6

*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. The APA's Requirement For "Final Agency Action"

Judicial review under the APA is available for a "final agency action for which there is no other adequate remedy in a court." *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (citations omitted); *see also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1069 (7th Cir. 2020). An agency action "is not final if it is only the ruling of a subordinate official, or tentative." *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)); *see also McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000).

**Argument**

### I. This Case Is Now Moot.

As a threshold matter, this case is moot because the central relief complained of—the reactivation of the SEVIS record related to Nali—has now been accomplished. *See* May Watson Decl. ¶ 5. This change is "retroactive to the date of [the] initial termination such that there is no gap in the plaintiff['s] SEVIS record." *Id.* at ¶ 7. And there are no plans to re-terminate that record in the foreseeable future. *See id.* at ¶ 6. A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). This occurs "when a party with standing at the inception of the litigation loses it due to intervening events." *Freedom from Religion Found., Inc. v. Concord*

7

*Cmty. Sch.*, 885 F.3d 1038, 1050 (7th Cir. 2018) (cleaned up). And standing must be re-evaluated throughout the entirety of a litigation. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67, (1997); *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013).

If the plaintiff argues that his case is capable of repetition, but can evade review, that argument should fail because this case is an inherent challenge to a distinct agency action—the termination of a SEVIS record—not a facial challenge to a policy. This exception applies when, "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 462 (2007). As to the first requirement, for example, the exception applies where "pregnancy is a significant fact in the litigation," but the "human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete," *Roe v. Wade*, 410 U.S. 113, 125 (1973), or in a challenge to pretrial detention which "is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted," *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). Nothing about SEVIS records is inherently short in duration to evade review. On the second requirement, there is no reasonable expectation that Nali will be subject to the same action again based on both the declarations discussed above, the letter that has now been sent to him from ICE, and because there is a presumption that persons (including foreign students) will obey the law. *See Jacobson v. United States*, 503 U.S. 540, 551 (1992) (discussing the "common understanding that most people obey the law").

In this regard, a comparison to another recent APA case, is useful. In *Moharam v. TSA*, 134 F.4th 598 (D.C. Cir. 2025), the plaintiff was removed from the No-Fly List and informed by

DHS that he would not be placed back on based on the information currently available to the agency. Under those circumstances, the court of appeals held that the plaintiff's No-Fly List claims were moot under those circumstances. *Id.* at 603–04. In arriving at this conclusion, the *Moharam* court explained that where a litigant's challenge is "sharply focused on a unique factual context" and "merely contends . . . that the record did not support his inclusion on the List," *id.* 608, any declaratory or injunctive relief "would not have [] preclusive effect . . . that would bind the Government and foreclose it from placing [the plaintiff] back on the No Fly List," *id.* at 606, because any future re-listing "would be a distinct legal wrong . . . . based on a different record," *id.* at 608. So too here.

Two other mootness exceptions are also possibly applicable here: the ongoing-policy exception and the voluntary-cessation exception. *See id.* at 929–30. Although the former exception "rarely" applies, it does so only when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*" *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 861 (7th Cir. 2018) (emphasis added). The declarations discussed above make plain that there is no such "immediacy and reality." This is fatal for Nali because the party seeking declaratory relief bears the burden of demonstrating that the "ongoing policy is a continuing and brooding presence that casts a substantial adverse effect on the interests of the petitioning parties." *Id.* (cleaned up).

Similarly, the voluntary cessation exception has not been met here because it is the *government* (rather than a private party) that has voluntarily ceased and now changed the challenged practice at issue here (that is, the plaintiff's SEVIS record termination). *See Freedom from Religion Found.*, 885 F.3d at 1051; *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d

9

1010, 1023 (7th Cir. 2016). That is the case here where "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." May Watson Decl. ¶ 6. This shows that the same conduct is not likely to recur here given the issuance of a new SEVIS termination policy and ICE's provision of letters to affected students

## II. Plaintiff's Unlawful Detention Claim Is Speculative And Unripe.

Nali's claim challenging unlawful detention, Am. Compl. ¶¶ 54–56, should be dismissed because it is entirely speculative and thus unripe, *see Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019) (discussing how, for a claim to be ripe, it cannot be "premised on uncertain or contingent events"). This is because his unlawful-detention claim is explicitly based on the assertion that he *may*, at some uncertain point in the future, be placed into removal proceedings and then be detained by ICE. *See* Am. Compl. ¶ 46. But a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016).

The plaintiff here is not presently (and has not been) in *any* sort of ICE custody or detention. Even accepting Nali's assertions that he once lacked lawful status as true (which defendants do not agree with), there are literally *millions* of foreign nationals presently within the United States who are here without lawful status. That does not mean those persons are currently detained or within ICE's custody such that they might each have viable claims wherever they may be located within the United States. This matters because an injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). As the Seventh Circuit has put it, "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and

10

immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

In this case, Nali does not adequately allege that there are any concrete plans to detain him. The amended complaint simply glosses over that issue by noting how he once could have been "at risk" of detention, Am. Compl. ¶ 46, but says nothing about "an explanation of when" he might be placed into detention, *Scruggs v. Nielsen*, No. 18 C 2109, 2019 WL 1382159, at *4 (N.D. Ill. Mar. 27, 2019). Without "any specification of *when* th[at] some day will be" there cannot be "a finding of [an] 'actual or imminent' injury" as required by Article III. *Defenders*, 504 U.S. at 564 (emphasis in original). Consequently, plaintiff's unlawful detention claim is speculative, unripe, and he does not have standing to seek declaratory or injunctive relief because a "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty, Int'l USA*, 568 U.S. 398, 409 (2013).

### III. Plaintiff's Due Process Claim Is Equally Meritless.

Nali's due process claim is equally unavailing. *See* Am. Compl. ¶¶ 45–48. That claim fails because, as the Seventh Circuit has explained, "[i]n order to make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings." *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004). Neither such interest exists here. Instead, case law is clear that foreign nationals lack any sort of property or liberty interest in SEVIS records. *See, e.g.*, *Doe 1 v. DHS*, No. 20-cv-9654, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub. nom.*, *Does 1–16 v. DHS*, 843 F. App'x 849, 852 (9th Cir. 2021) ("[T]he Student-Athletes do not cite any legal authority to support their position that this interest amounts to a protected property interest. We also find none. Without a protected liberty or property interest at stake, the Student-Athletes do not have a viable due process claim." (internal citation

11

omitted)); *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 18-cv-189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018); *Fenghui Fan v. Brewer*, No. 08-cv-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009), *aff'd*, 377 F. App'x 366, 368 (5th Cir. 2010).

Again, the SEVIS database is an administrative tool that does not affect the lawfulness of someone's nonimmigrant status. *See Yunsong Zhao*, 2018 WL 5018487, at *4–5; April Watson Decl. ¶¶ 3–5, 10. So far in this case, the plaintiff has argued otherwise based on guidance documentation and another lawyer's conclusory testimony about *what the law is*,[4] *see* Dkt. 21, but others' misinterpretation of the SEVIS database does not change the fact that USCIS (which administers work authorizations for F-1 OPT students such as Nali) "does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status," Young Decl. ¶ 7; *see also Yunsong Zhao*, 2018 WL 5018487, at *5 (determining that SEVIS *record* and F-1 *status* are distinct). Moreover, even if there were such a protected interest, the administrative processes from USCIS that are afforded to plaintiff would satisfy the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976). Those review procedures (available to him in the event the plaintiff had actually lost his F-1 status) would allow him to seek reinstatement. 8 C.F.R. § 214.2(f)(16).

## IV. Plaintiff's APA Claim Likewise Fails.

Nali's APA claim should fare no better. Am. Compl. ¶¶ 49–53. This is because the Privacy Act—not the APA—controls agencies' procedures vis-à-vis amendment of governmental records over individuals. This is important because "[t]he doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad

---

[4] "Opinions that amount to legal conclusions do not assist the trier of fact, and expert testimony that is largely on purely legal matters and made up of solely legal conclusions is not admissible." *Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013).

waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.* In this case, the Privacy Act displaces plaintiff's APA claim, as it is directly on point and allows only certain individuals to challenge their data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims. *See* 5 U.S.C. § 552a(g)(1); *see also Chichakli v. Kerry*, 203 F. Supp. 3d 48, 57 (D.D.C. 2016) (dismissing claims because claims related to unauthorized disclosure of records must be brought pursuant to Privacy Act). And F-1 nonimmigrants such as Nali are not authorized to bring such a claim.

Most relevant here, however, is how the Privacy Act *prohibits* most foreign nationals from filing suit challenging records. *See* 5 U.S.C. § 552a(a)(2). Consequently, the United States has not waived its sovereign immunity here regarding a foreign national's SEVIS record. *See* 5 U.S.C. § 701(a)(1); *Durrani v. USCIS*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."). Moreover, this court would lack jurisdiction over any such claim because Nali has come nowhere close to exhausting administrative remedies. *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987) (no jurisdiction over claims under the Privacy Act until a plaintiff presents them to the agency). In sum, there is no waiver of sovereign immunity here vis-à-vis SEVIS entries for F-1 students.

Setting aside the Privacy Act, there would still be no "final agency action" in this matter where, as here, the relevant SEVIS entry (which has now been changed multiple times) is merely one step in a multi-step, multi-agency process. This matters for Nali's APA claim because agency

13

action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. And action is final under the APA only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Here, even if plaintiff's nonimmigrant status (rather than only his SEVIS record) were at issue (which it is not), he could administratively challenge the relevant agency decisions. *See* 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b). That means there had been no "consummation" of anything. *See, e.g.*, *Dhakal v. Sessions*, 895 F.3d 532, 539–40 (7th Cir. 2018); *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000) (plaintiff failed to exhaust administrative remedies because review would be available if and when a removal proceeding were initiated). Nali has never even acknowledged these Seventh Circuit decisions, as well as the *many* other steps in the administrative process if USCIS (not ICE) ever determines that he lost his F-1 status (which it has not). *See* Young Decl. ¶¶ 7–11.

Instead of looking to Seventh Circuit decisions, the amended complaint relies on a Third Circuit case, *Jie Fang v. Director of ICE*, 935 F.3d 172 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action. *See* Am. Compl. ¶ 50. That is misguided because it is out-of-circuit authority that conflicts with Seventh Circuit decisions such as *McBrearty* and *Dhakal*. Nor did that case even focus on SEVIS records. In *Jie Fang*, DHS conducted a sting operation to catch fraudulent student visa brokers. 935 F.3d at 173–74. During that process, several foreign students were granted nonimmigrant visas and entered the United States only to have their immigration statuses revoked by DHS at the conclusion of the investigation. *Id.* Because their foreign-student *statuses* (as opposed to just their visas) had been revoked, the plaintiffs were placed into removal proceedings. *Id.* at 178–79. On appeal, the Third Circuit concluded that the regulation providing for reinstatement of F-1 nonimmigrant status, 8 C.F.R.

§ 214.2(f)(16), was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Id.* at 177–78. The court of appeals thus concluded that the agency's revocation of student status for fraud (formalized in an official letter to each plaintiff) was sufficiently final for APA review. *See id.* But the relevant issue in *Jie Fang* was not a SEVIS record; it was the revocation of lawful nonimmigrant status, which then led to the plaintiffs being immediately placed into removal proceedings. *See id.* at 178–79. Nothing close to those facts is present here. In fact, such factual distinctions is why other courts have concluded the opposite of *Jie Fang* for another set of former F-1 students who challenged their SEVIS-record terminations where the formal letters sent to them by ICE had no similar accusation of fraud. *See Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894, at *7 (D. Ariz. Nov. 16, 2021) ("Plaintiffs have . . . identified no . . . final agency action[ ] that is subject to judicial review."), *aff'd*, No. 21-17070, 2022 WL 17484323, at *1 (9th Cir. Dec. 7, 2022). The plaintiff's APA claim here is thus far closer to the facts of *Yerrapareddypeddireddy* than to *Jie Fang*, and should fail for that reason.

## Conclusion

For the foregoing reasons, the court should dismiss this case.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov